The appellant, James Edward Isom, was indicted for intentional murder in violation of § 13A-6-2, Code of Alabama
(1975). The appellant pleaded not guilty and the jury found him guilty of manslaughter. Subsequently, the appellant filed a motion for a new trial, which was denied. For the reasons outlined below, we affirm.
The appellant testified that on December 3, 1981, after he had awakened he attempted to awaken his wife. When he was unable to do so, the coroner's office and the Birmingham Police Department were notified. His wife was dead. An autopsy was performed on her body and it was determined that the cause of death was a lacerated liver resulting from a blow to the liver area of the abdomen. Following this diagnosis, a murder warrant was issued for the *Page 210 
appellant. He was arrested on June 5, 1982, when he turned himself in to the Jefferson County Sheriff's Department.
At trial, a witness for the State of Alabama, Sharon Hardy, testified that she saw the appellant and his wife on the night of December 2, 1981, at approximately 9:30 or 10:00. She allegedly saw the appellant beat his wife in the head with his fists and drag her into their apartment by her feet. Sharon Hardy's mother testified that she witnessed an altercation between the appellant and his wife on December 2, 1981, wherein the appellant slapped her, dragged her by the waist, and then carried her into their apartment. The deceased's uncle and grandmother both testified that the appellant had stated on numerous occasions that he would either break the deceased from drinking or he would kill her; further, the grandmother testified that the appellant had told her that he had beaten the deceased. There was testimony concerning records showing that the deceased had been hospitalized on two separate occasions just prior to her death. A witness stated that she saw the appellant sling the deceased into a slab of concrete a few days prior to the deceased's hospital visit during which a cast was put on her arm.
 I.
The appellant contends that because he was charged with intentional murder, the manslaughter conviction cannot stand as it is not a lesser included offense of intentional murder. "[A] charge on a lesser included offense is not proper unless there is a reasonable theory from the evidence to support such a proposition. Daly v. State, [442 So.2d 143 (Ala.Cr.App. 1983)], Ala. Code, § 13A-1-9 (1975)." Clark v. State, 451 So.2d 368, 373
(Ala.Cr.App. 1984). "Under Alabama law, an accidental killing may support a conviction for murder, manslaughter, or negligent homicide, depending on the circumstances of the case." Weems v.State, 463 So.2d 170, 172 (Ala. 1984).
 "Recklessly causing another's death may give rise to the lesser included offense of manslaughter. A defendant who recklessly causes another's death commits manslaughter if he `consciously disregard[ed] a substantial and unjustifiable risk that his conduct would cause that result.' . . . [I]t appears that the degree of recklessness which will support a manslaughter conviction involves a circumstance which is a `gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation,' but is not so high that it cannot be `fairly distinguished from' the mental state required in intentional homicides." Id.
In the case at bar, witnesses' testimony indicated that the appellant was intoxicated on the night of December 2, 1981. This court has held that in an intentional murder prosecution, a jury charge on the lesser included offense of manslaughter would be proper because it was evidence, regardless of how highly controverted, to the effect that the appellant was intoxicated. "`No matter how strongly the facts may suggest that appellant was not so intoxicated at the time he committed the offense that he was incapable of forming the necessary specific intent, the jury should have been instructed on manslaughter as a lesser included offense since there was a "reasonable theory from the evidence which would support the position."'" Silvey v. State, 485 So.2d 790, 793 (Ala.Cr.App. 1986).
Moreover, the appellant contends that because "the jury found the appellant not guilty of intentional murder by finding the appellant guilty of manslaughter, the appellant is due to have this conviction reversed." However, this contention has no merit under the holding in Guy v. State, 395 So.2d 161
(Ala.Cr.App. 1981), wherein this court stated that "[a]lthough appellant is clearly correct in saying that the verdict of the jury [of guilty of manslaughter in the second degree] has the effect of an acquittal of defendant of manslaughter in the first degree and murder in both degrees, he presents no authority for his contention that it necessarily follows therefrom, when coupled with absence of evidence *Page 211 
that the homicide was unintentional, that the conviction of manslaughter in the second degree should be set aside." Guy,supra, at 163.
Most importantly, the appellant did not take exception to the oral charge made by the judge on manslaughter. "Review on appeal is limited to matters on which rulings are invoked at the trial level. In the absence of a ruling, a request for a ruling, or an objection to the court's failure to rule, this court has nothing to review. Whorton v. State, 422 So.2d 812
(Ala.Cr.App. 1982)." Robinson v. State, 441 So.2d 1045, 1048
(Ala.Cr.App. 1983); Hutcherson v. State, 441 So.2d 1048
(Ala.Cr.App. 1983). Thus, "the correctness of the trial court's oral charge cannot be challenged for the first time on appeal."Marschke v. State, 450 So.2d 177, 179 (Ala.Cr.App. 1984);Singletary v. State, 473 So.2d 556, 575-76 (Ala.Cr.App. 1984). Further, the appellant's counsel stated that he was satisfied with the charges as given at the trial level. "`Such an announcement precludes our review of the alleged error.'Thompson v. State, 405 So.2d 717, 719-20 (Ala.Cr.App.), cert.denied, Ex parte Thompson, 405 So.2d 721 (Ala. 1981)."Richardson v. State, 456 So.2d 1152, 1155 (Ala.Cr.App. 1984). See also Tuck v. State, 384 So.2d 1240, 1242-43 (Ala.Cr.App. 1980).
The instructions relating to manslaughter as a lesser included offense of intentional murder were not confusing or otherwise prejudicial to the appellant. Lewis v. State,439 So.2d 1353 (Ala.Cr.App. 1983).
 II.
Appellant further contends that because the trial judge gave the jury an instruction on manslaughter, the jury should also have been instructed on the lesser included offense of criminally negligent homicide, "especially in light of the fact that the defendant was subsequently convicted of the offense of manslaughter."
 "If the homicide is brought about by `criminal negligence,' the defendant is guilty of criminally negligent homicide. The essential difference between `recklessness,' as that term is used in the murder and manslaughter statutes, and `criminal negligence' is that a reckless defendant is one who has `consciously disregarded' a substantial and unjustifiable risk, whereas a negligent actor needs only to disregard a risk of which he `should have been aware.'" Weems v. State, supra, at 172.
This court has stated that "[t]he submission to the jury of manslaughter as a lesser included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense." Phelps v.State, 435 So.2d 158, 166 (Ala.Cr.App. 1983). Thus, a charge on criminally negligent homicide has been held improper although a charge on manslaughter as a lesser included offense was necessary. Wyllie v. State, 445 So.2d 958, 962 (Ala.Cr.App. 1983); Quates v. State, 439 So.2d 199, 202 (Ala.Cr.App. 1983). The Alabama rule "requires that a lesser included offense instruction be given if `there is any reasonable theory from the evidence which would support the position.'" Kennedy v.State, 472 So.2d 1092, 1102 (Ala.Cr.App. 1984), judgmentaffirmed, 472 So.2d 1106 (Ala. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 340, 88 L.Ed. 325 (1985). Further, "`[t]he safer practice is to charge upon all degrees of homicide.'" Silvey v.State, 485 So.2d 790, 793 (Ala.Cr.App. 1986), quoting Phelps v.State, 435 So.2d 158, 163 (Ala.Cr.App. 1983).
"`The only difference between manslaughter under § 13A-6-3
(a)(1) [Alabama Code (1975)] and criminally negligent homicide is the difference between recklessness and criminal negligence. . . . The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it.'" Woods v. State, 485 So.2d 1243, 1245
(Ala.Cr.App. 1986), quoting C. Torcia, 1 Wharton's Criminal Law
Section 27 (14th ed. 1978). In Woods, supra, the factual circumstances surrounding the murder were similar to those in the case at bar. Witnesses testified that the appellant had hit the victim on a number of occasions, while the appellant *Page 212 
alleged that he did not intend to kill the victim, who was his close friend. Further, his friend was an alcoholic and therefore more prone to subdural hematomas. "Certainly it is rational that one might not be aware that a blow might cause another's death." 485 So.2d at 1246. This court found that there was a reasonable theory from the evidence to support a charge of criminally negligent homicide.
Although a reasonable theory for a charge of criminally negligent homicide might also exist under the case at hand, no error can be found in the trial judge's failure to so charge, because the appellant never requested this instruction at trial. When an issue is raised for the first time on appeal, it is too late for review. Vinzant v. State, 462 So.2d 1037, 1040
(Ala.Cr.App. 1984). "The trial court cannot be placed in error on grounds not asserted." Johnson v. State, 421 So.2d 1306
(Ala.Cr.App. 1982); Cook v. State, 420 So.2d 289 (Ala.Cr.App. 1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1198,75 L.Ed.2d 441 (1983).
 III.
The appellant alleges that the trial court was in error by denying his motion for a new trial because newly discovered evidence on the cause of death in a murder trial entitles him to a new trial. To establish the right to a new trial based on newly discovered evidence, the appellant must show: (1) that the evidence will probably change the result if a new trial is granted; (2) that it has been discovered after the trial; (3) that it could not have been discovered before the trial by the excercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.Perry v. State, 455 So.2d 999, 1003 (Ala.Cr.App. 1984); Willisv. State, 447 So.2d 199, 202 (Ala.Cr.App. 1983); Bland v.State, 390 So.2d 1098, (Ala.Cr.App.), cert. denied,390 So.2d 1109 (Ala. 1980), cert. denied, 451 U.S. 991, 101 S.Ct. 2332,86 L.Ed.2d 851 (1981).
"The appellate courts look with disfavor on motions for new trials based on newly discovered evidence and the decision of the trial court will not be disturbed absent abuse of discretion." McBryar v. State, 368 So.2d 568, 574
(Ala.Cr.App.), cert. denied, 368 So.2d 575 (Ala. 1979); Willisv. State, supra, at 202; Baker v. State, 477 So.2d 496
(Ala.Cr.App. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 1231,89 L.Ed.2d 340 (1986). Further, "this court will indulge every presumption in favor of the correctness" of the trial judge's decision. Troha v. State, 462 So.2d 950, 952 (Ala.Cr.App.),reversed on other grounds, 462 So.2d 953 (Ala. 1984), onremand, 462 So.2d 954 (Ala. 1985.) The trial court is in the best position to determine the credibility of the new evidence.Snider v. State, 473 So.2d 579 (Ala.Cr.App. 1985); Robinson v.State, 389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151
(Ala. 1980.) "The trial court is the factfinder in a hearing on a motion for new trial. One condition of the trial court's granting a new trial on the basis of newly discovered evidence is that the court must believe the evidence presented at the hearing." McDonald v. State, 451 So.2d 440, 442 (Ala.Cr.App. 1984).
In the present case, the newly discovered evidence is a coroner's testimony that would refute the testimony of the coroner who stated at trial that the victim's death could not have been a result of her chronic alcoholism. However, a new trial should not be granted on the basis of newly discovered evidence that merely serves to impeach the coroner's testimony as to the cause of death, Bland v. State, supra, and it is clear that the appellant is not alleging perjury. Baker v.State, 477 So.2d 496 (Ala.Cr.App. 1985).
The appellant contends that he is entitled to a new trial because this new evidence about the cause of death could affect the outcome of the case. However, this court has held that the trial court was not in error for denying the appellant's motion for a new trial where, in support of the motion, the appellant presented a witness who stated that it was, in fact, he who had committed the offense charged. Tankersley v. State,448 So.2d 486 (Ala.Cr.App. *Page 213 
1984); Robinson v. State, 389 So.2d 144 (Ala.Cr.App. 1980). See also Agee v. State, 424 So.2d 1368 (Ala.Cr.App. 1982) (wherein a new trial was denied in a murder prosecution arising from the appellant's reckless operation of his automobile while intoxicated, the new trial having been sought on the basis of evidence that a large pothole existed in the street.)
 IV.
The appellant contends that he is entitled to a reversal and to be released from prison because a two-and-one-half year delay in preparing a transcript for his appeal violated his right to due process and thereby prejudiced him. It is clear that a criminal defendant has a right to a complete transcript of the trial proceedings. United States v. Atilus, 425 F.2d 816
(5th Cir. 1970); Hardy v. United States, 375 U.S. 277,84 S.Ct. 424, 11 L.Ed.2d 331 (1963). In the present case, the reason for the two-and-one-half year delay does not appear on the record. "Lamentable though it may be, such delays are all too common."United States v. Pratt, 645 F.2d 89, 91 (1st Cir.Mass. 1981),cert. denied, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195
(1981). Nonetheless, "due process can be denied by any substantial retardation of the appellate process, including an excessive delay in the furnishing of a transcription of testimony necessary for completion of an appellate record."Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir.Tex. 1980), cert.denied, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). To determine whether a particular delay amounts to a violation of due process, the factors set forth by the Supreme Court inBarker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972), should be employed in deciding whether a violation of the right to a speedy trial has occurred. United States v.Johnson, 732 F.2d 379, 381 (1984); Rheuark v. Shaw, supra.
These factors include: the length of the delay, the reason for the delay, the defendant's assertion of his right, and any prejudice caused to the defendant. Barker, 407 U.S. at 530,92 S.Ct. at 2191, 33 L.Ed.2d at 116-117. These factors will be discussed in sequence.
Although no precise length of delay has been established as a guide, this two-and-one-half year delay falls within the area at which courts have indicated that due process may have been denied. See United States v. Johnson, supra, at 382 (two-year delay); Layne v. Gunter, 559 F.2d 850, 851 (1st Cir. 1977),cert. denied, 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787
(1978) (three year delay); Odsen v. Moore, 445 F.2d 806, 807
(1st Cir. 1971) (nearly three years); Rheuark, supra, at 302-03 (assumes without deciding that a delay of nearly two years violates due process).
The record is silent as to the reason for the two-and-one-half-year delay. If the delay in obtaining the transcript can be ascribed to the actions of the defendant, then he may not claim deprivation of an effective appeal as a violation of his right to due process. Lumbert v. Finley,735 F.2d 239, 244-45 (7th Cir. 1984). As the State indicates, unavoidable delays result from the volume of appellate cases which court reporters must prepare for appeal. Johnson, supra, at 382; Pratt, supra.
With respect to the factors of prejudice, the Barker court determined that prejudice "should be assessed in light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532, 92 S.Ct. at 2192,33 L.Ed.2d at 118. The three designated interests were: (1) the prevention of oppressive pretrial incarcerations; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the accused's defense might be impaired. Id. The appellant claims that his liberty interests have been violated because for almost three years he has been serving his sentence and "could not possibly be eligible for parole or early release." In discussing this point, the court in Johnson, supra, at 382, indicated:
 "[E]ven if defendant would not be free if this appeal were successful, the other interests identified by the Supreme Court to be considered in determining whether *Page 214 
prejudice to the accused has occurred weigh in Johnson's favor. His anxiety over the outcome of his appeal was obvious, and the appeal possibly was determiniative of how long he would have to spend in prison. The passage of almost three years between his original conviction and resolution of his appeal also undermines the likelihood of a reliable development of the facts at a new trial, if that should be necessary." Id.
None of the factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"; rather, they must be weighed and balanced; "[b]ut, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." De Lancy v. Caldwell,741 F.2d 1246, 1248 (10th Cir. 1984), quoting Barker, 407 U.S. at 533,92 S.Ct. at 2193, 33 L.Ed.2d at 118-19. The analysis of these factors is an "ad hoc determination," Rheuark at 303 n. 8, and an important consideration is the outcome of the appeal. The right to a speedy trial "in its most pristine sense would be triggered" when, after a substantial delay in awaiting appeal, an appellant's conviction is reversed and the State is allowed to retry him, because witnesses or other evidence may no longer be available as a result of the delay. Id. But see UnitedStates v. Pratt, supra, at 91 (delay held not unconstitutional in light of the appellant's seeking reversal and either a new trial or entry of judgment for him). Thus, in the case at hand, we hold in accordance with Johnson, supra, wherein the court stated, "we conclude that the delay in preparing defendant's transcript may well have violated due process . . ., however, . . . where, as here, the appeal has been heard and found lacking in merit there is not any sound reason to order defendant's release. Id. at 382-83. See also Layne v. Gunter, supra, (wherein appellant alleged that he was denied due process because of an undue delay in the State's appellate process, but action by the federal court was deemed inappropriate where State courts were now moving forward with the appeal); MoralesRoque v. Puerto Rico, 558 F.2d 606 (1st Cir. 1976) (wherein an order directing the expeditious preparation of transcripts was the more appropriate relief). "[N]ot every delay in the appeal of a case, even an inordinate one, violates due process."Rheuark, supra, at 303.
There is little precedent on this issue in Alabama caselaw; however, where this court granted a court reporter three extensions of time to file transcripts, the appellant was not denied due process. Lynn v. State, 380 So.2d 366 (Ala.Cr.App. 1980.) Moreover, the appellant was held not to have been denied due process where the trial court granted a court reporter twelve extensions. Carter v. State, 356 So.2d 682 (Ala.Cr.App. 1978), cert. denied, 356 So.2d 689 (Ala. 1978). "`"[T]he constitutional guarantee to a speedy trial upon which appellant relies cannot be easily transposed to an appeal. The purpose of the guarantee is to prevent long unjustified incarceration or anxiety prior to trial and to limit the possibility that the memory of witnesses may dim or evidence may be lost, thus impairing the ability of the accused to defend himself. . . . On the other hand, delay in appeal is not truly prejudicialexcept in case of reversal. This is not such a case."'" (Emphasis added in Carter.) Carter v. State, supra, at 689, quoting Populus v. State, 48 Ala. App. 686, 267 So.2d 477
(1972.)
AFFIRMED.
All the Judges concur with BOWEN, P.J., concurring in result only. *Page 215