The defendant, Sara Nell Robinson, was convicted, on April 3, 1985, in Mobile Circuit Court of the murder of her husband, Franklin Delano Copeland. She received a sentence of ten years in the state penitentiary for the crime. In 1986, Robinson appealed her conviction to the Court of Criminal Appeals, and that court affirmed, in an opinion issued on October 14, 1986. Thereafter, Robinson filed a petition for writ of certiorari with this Court, which we denied on July 1, 1988. No other appeals or petitions were asserted by Robinson.
In August 1988, Robinson petitioned for a new trial pursuant to Rule 20, Alabama Temporary Rules of Criminal Procedure. The instant petition for writ of certiorari grows out of that action. In that Rule 20 petition Robinson asserted that she had newly discovered evidence of a pistol permit issued to the deceased and that the prosecutor had withheld knowledge of that permit from her. That petition states as grounds the following:
 "II. Her conviction is due to be set aside on two grounds:
 "A. Her conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
 "B. Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
 "1. The facts relied upon were not known by petitioner or her counsel at the time of trial or in time to file a post-trial motion and had not been discovered by any of those times.
"2. The evidence is not merely cumulative.
 "3. The evidence does not amount merely to impeachment evidence.
 "4. If the evidence had been known at the time of trial, the result would probably have been different.
 "5. The evidence establishes that petitioner was telling the truth about the only physical evidence introduced at trial.
 "6. Petitioner is innocent of the crime for which she was convicted."
The trial court, on September 23, 1988, granted Robinson a new trial. She was released from custody on a $50,000 bond. The State of Alabama, through the attorney general, appealed the new trial order to the Court of Criminal Appeals. That court reversed, with an opinion dated May 12, 1989. 565 So.2d 661.
To aid the reader in grasping the factual scenario of this case, we set forth the statement of facts that is found in the order of the trial court granting Robinson a new trial:
 "Reduced to its essentials, the State proved at trial that petitioner had the means, the motive, and the opportunity to commit the charged offense. One of petitioner's daughters, Darlene Copeland Volking, also had the opportunity, being *Page 666 
present in the residence on the night of the homicide; she also had a motive, having testified that she had been molested by the deceased. In a decision followed without deviation by the Courts of this State since it was rendered, the Supreme Court in Ex parte Acree, 63 Ala. 234 (1879), with regard to the sufficiency of proof by circumstantial evidence, held that 'No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires.' As such, the sufficiency of the evidence at trial depended upon proof that petitioner had superior access to or control over the means of the homicide — the .22 caliber H R revolver.
 "At trial, the State introduced petitioner's application for a pistol permit for the murder weapon, dated April 2, 1980, which would have rendered any permit issued pursuant to the application in effect at the time of the homicide (R-281). No pistol permit issued on the application was introduced. A reasonable jury could readily have drawn an inference from the application that the pistol was registered to petitioner as of the date of the homicide. That the murder weapon was a pistol registered to petitioner is a highly prejudicial conclusion. The Court notes that the Court of Criminal Appeals, in affirming petitioner's conviction (that Court, of course, did not have the benefit of considering the then-undiscovered pistol permit of the deceased), specifically observed that the sufficiency of the evidence included proof that a .22 caliber revolver was 'registered' in petitioner's name.
 "Further, the State during its questioning of witnesses continually characterized the .22 revolver as 'your gun' and 'her gun,' referring to petitioner (for illustrative instances, see RT-266, 267, 277, 280, 281, 343, 345). Further, the State specifically referred to the .22 revolver as 'her gun,' meaning petitioner's, during its closing argument to the jury. As is the court reporter's usual practice, not all of the closing argument was transcribed, but rather, only that argument which was objected to by one of the attorneys. Nonetheless, an instance of the State referring to the weapon as 'her gun' appears in the transcript at R-353. There were other instances of identical argument made by the State, which were not transcribed because the argument was not objected to. The Court observed the jury during the testimony of the witnesses and the closing argument of the attorneys, and the Court finds as a fact that the continual references to the .22 revolver as, 'her gun,' coupled with the introduction of the aforementioned pistol permit application in petitioner's name for the .22 revolver, were highly prejudicial to petitioner.
 "In the final analysis, the newly discovered pistol permit negated the highly prejudicial inference created at trial and argued by the State that the murder weapon was petitioner's gun, and as such, also negated the inference to be drawn that petitioner had superior control over the means of the homicide than did Darlene Copeland Volking. With the case in such a posture, it is reasonably consistent from the evidence that either petitioner or Darlene Copeland Volking may have committed the act. If the evidence is without selective application to either of the two, then the circumstances can be reasonably reconciled with the theory that some person other than petitioner (Volking) committed the act, Ex parte Acree, supra, and the applicable test for the sufficiency of circumstantial evidence is not met. Accordingly, the Court finds as a fact that if the newly discovered pistol permit had been known at the time of trial, the result would probably have been different."
It is important to note that the only physical evidence introduced by the state consisted of the pistol used to commit the murder and a pistol permit issued to Robinson. That permit allowed Robinson to carry the murder weapon concealed on her person. Most of the other evidence presented in the case was purely circumstantial *Page 667 
and lent little actual proof concerning the commission of the crime charged. That other evidence consisted of proof that Robinson and the deceased may have had marital difficulties; that Robinson may have had money problems; that, upon her husband's death, Robinson received money under oil and gas leases; that part of a set of rings owned by Robinson and claimed to have been stolen were found in a relative's possession; that Robinson may have "staged" a burglary of her home and a robbery of her business; and that the burglary in which her husband was killed may have been faked.
The granting or denial of a new trial on the ground of newly discovered evidence is a matter left largely to the discretion of the trial judge, whose decision will be overturned only for an abuse of that discretion. White v. State, 294 Ala. 265,314 So.2d 857 (1975). An appellate court, in reviewing a grant or denial of a new trial motion, is obliged to indulge every presumption in favor of the correctness of the trial court's decision. Ward v. State, 440 So.2d 1227 (Ala.Cr.App. 1983);Woodard v. State, 401 So.2d 300 (Ala.Cr.App. 1981).
We find persuasive the following argument by defense counsel to the trial judge at the hearing on Robinson's Rule 20 motion:
 "The second point we raise, aside from the impact of the value of the evidence, is that the State was under a duty to disclose all evidence that was exculpatory that was in its possession or that it had knowledge [of]. It clearly had in its possession the previous years' applications and permits and the application for 1980 and all of those, of course, supported the State's contention as to the ownership of the gun and the likelihood of who had possession of it the night of the murder. It did not produce its copies of the actual license showing that, in fact, the Defendant's story was true, the license had been issued to Franklin Delano Copeland, even though [the defendant] had applied for it that month. He signed for it. What we have submitted is the original document. I do not know where the State — where the County Sheriff's Department copies are.
 "If Your Honor will remember this case, this was a case where all of the physical evidence other than the gun had disappeared in the intervening years, the screwdrivers, the screens, the screws, the blood samples. Everything — the fingerprints. Everything other than the gun itself. In fact, even the Chickasaw Police Department's internal files had gone missing over the period of the investigation.
 "It's my contention that if anything, anything in this case would be exculpatory, and we contended that there the other piece of physical evidence, the ring, had been hidden, had been suppressed by the State or at least games had been played about whether the ring that they had at the point when we gave our voluntary statement was the ring, and they never answered the question [sic]. We contend that if anything else in this case could have been exculpatory, it would have been the production of the actual permit issued showing that it must have been true that Mr. Copeland went down and got the gun himself and signed for the license in his own name. We could have then been in a position to argue that as preposterous as her argument might have sounded, that it was true, that the gun was not in her possession."
We agree with the argument made by Robinson's counsel that this new evidence was exculpatory and that it should have been disclosed to Robinson by the prosecution. Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brady
states:
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
Thus, it matters not that the trial judge found that the prosecution did not intentionally fail to disclose the pistol permit to Robinson. The prosecution was bound by a duty to disclose all exculpatory *Page 668 
evidence to Robinson. The concept of due process of law demands no less.
In its order granting Robinson a new trial, the court stated:
 "The Court has considered the affidavit of petitioner's trial counsel, pursuant to Rule 20.9(a), which asserts that petitioner's trial counsel attempted to examine, pre-trial, all pistol permits issued for the murder weapon; that he was told by a custodian of those records at the Mobile County Sheriff's Office that all such records had been turned over to the Attorney General; that the Attorney General's documents did not reveal a pistol permit in the name of the deceased in effect as of the date of the homicide; and that based thereon, petitioner's trial counsel assumed that such a pistol permit did not exist. The Court finds as a fact that under the circumstances of this case, the actions of petitioner's trial counsel constituted reasonable diligence to ascertain the existence of the now newly discovered permit. Accordingly, the Court finds [as] a fact that the permit in question was not discoverable within any of the above-referenced times through the exercise of reasonable diligence."
The sheriff's representative also stated that the permits for the murder weapon issued to Robinson and her husband were kept in the same file. We can not but conclude, therefore, that the attorney general had possession of the permit in question and that this evidence was not disclosed to Robinson.
A particular piece of evidence is "material" and must be disclosed if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley,473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). See generally, Note, Specific Requests and the Prosecutorial Dutyto Disclose Evidence: The Impact of United States v. Bagley, 1986 Duke L.J. 892. The pistol permit issued to the deceased tended to negate the inference that Robinson had greater access to, and greater control of, the murder weapon. Based upon our review of the evidence and the other items in the record before us, we conclude that the pistol permit would have been useful to Robinson's defense, and that it was material and should have been disclosed to Robinson. Therefore, the trial court did not err in granting Robinson a new trial.
Based upon the foregoing, the judgment of the Court of Criminal Appeals is reversed, and the cause is remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.